

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | \* | CR. 14-40005 |
| Plaintiff, | \* | |
| vs. | \* | REPORT and RECOMMENDATION |
| LANCE MAJESTIC HOUSE, | \* | |
| Defendant. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Pending is Defendant's Motion to Suppress Identification Evidence (Doc. 19). A hearing was held on Wednesday, March 5, 2014. Defendant was personally present and represented by his attorney of record, Mr. Michael Hanson. The Government was represented by Assistant United States Attorney Jennifer Mammenga. One witnesses testified at the hearing. Two exhibits were received into evidence. Both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Based on a careful consideration of all the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Suppress be DENIED.

## JURISDICTION

Defendant is charged in an Indictment with being a felon in possession of a firearm in violation of 18.C. §§ 922(g)(1) and 924(a)(2). The pending Motion was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Schreier's Standing Order dated March 18, 2010.

## FACTUAL BACKGROUND

### Special Agent Emmet Warkenthien

Emmet Warkenthien is a special agent with the Bureau of Alcohol, Tobacco and Firearms and Explosives. On July 26, 2013, he became involved in the investigation of Mr. House. Warkenthien was not involved in Mr. House's actual arrest. Warkenthien reviewed the police

reports of the incident which led to House's arrest, then met with the eye witness (Taylor Hruska). Warkenthien's review of the reports revealed Hruska called police when she viewed from her window an altercation on the sidewalk outside her house. Hruska observed a man point a gun at another person and rack the slide. Hruska called 911 and described the man with the gun as a male with a pistol who was wearing a black shirt, blue jeans, and a red baseball hat.[1] She did not indicate a racial ethnicity.[2] She did not mention a ponytail or tattoos. Police were dispatched to the scene. When the police arrived, House and the other person involved in the altercation fled. House was apprehended and arrested. It is unknown whether Hruska identified House on the scene at the time of his arrest.

Warkenthien worked with the Sioux Falls Police Department to develop a photo lineup to show to Hruska. Warkenthien described the procedure used to develop the photo lineup as follows: Warkenthien met with a Sioux Falls Police Department intelligence analyst. They used a computer program which compared House's booking photo to other photos of persons who had been booked into the Minnehaha County jail. They entered House's physical characteristics into the program then looked for photos of persons with physical features and characteristics similar to Mr. House.

Warkenthien met with Hruska on August 20, 2013. Warkenthien told Hruska he had a photo lineup for her to review. He told her that the person she observed on July 26, 2013 may or may not be in the photo lineup and that if the person she saw in July was in the lineup she should identify the person by placing her initials next to the photo. Warkenthien did not suggest to Hruska which person in the photo lineup might be the person she saw on July 26, 2013. Exhibit 1 is a color copy of the photo lineup viewed by Hruska on August 20, 2013.[3] Hruska immediately identified

---

[1] The government's brief indicates the witness described the man with the gun as wearing a *red* shirt and a *black* baseball hat. The police reports were not admitted into evidence, so the discrepancy between Warkenthien's recollection and the information in the Government's brief cannot be reconciled.

[2] In its brief, the Government indicates Hruska described the man with the gun to 911 dispatch as a black man. Warkenthien testified Hruska did not mention race in her description, but only that the man had a gun and the clothing he was wearing. Again, the discrepancy cannot be reconciled. Nevertheless, based on Hruska's description, House was apprehended and arrested.

[3] Warkenthien indicated this type of photo lineup is referred to as a "six pack."

photo number 2 as the person she saw on July 26, 2013. Before her identification of House from the photo lineup, Hruska did not know House and did not know his name. [4]

## DISCUSSION

### Burden of Proof

"In order to prevail on a claim of an unduly suggestive photographic lineup, a defendant has the initial burden of proving that the identification procedure was impermissibly suggestive." *English v. Cody*, 241 F.3d 1279, 1282 (10th Cir. 2001) *citing United States v. Wade*, 388 U.S. 218, 240, n. 31, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). "It is only after the defendant meets this burden that the burden shifts to the government to prove that the identification was reliable independent of the suggestive procedure. It is only necessary to reach the second element of the inquiry if the court first determines that the array was impermissibly suggestive." *English*, 241 F.3d at 1283. The standard of proof is a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

### 1. The Identification Procedure Was Not Impermissibly Suggestive

House moves to suppress the evidence of the photo lineup because he asserts it was overly suggestive. House bases his assertion upon his claims that: (1) he has very light skin and all of the other men depicted in the photo lineup were either African American or had African American features; (2) House was the only man in the photo lineup who had a ponytail; and (3) House and only one other man in the photo lineup had tattoos on their necks. The other tattooed man had a shaved head.

"When considering the admissibility of a photo lineup identification, we examine 1) whether the identification procedure is impermissibly suggestive; and 2) whether under the totality of the circumstances the suggestive procedure creates a very substantial likelihood of irreparable

---

[4]Exhibit 2 is a photo copy of the exact photo lineup which was initialed by Hruska. The names of the individuals were visible to Hruska. That the names of the suspects were visible is somewhat disconcerting to the Court. The only evidence, however, indicates that Hruska was not otherwise aware of the name of the man she saw on July 26, 2013.

3

misidentification." *United States v. Gilbert*, 721 F.3d 1000, 1006 (8th Cir. 2013) (citations omitted).[5] In *Gilbert* the Court concluded the "six pack" photo lineup was not impermissibly suggestive.

> Each photograph is a head shot that depicts its subject from the neck up. The six subjects have similar facial features and skin tones. Each was an African American male with short hair and a small amount of facial hair on the upper lip, chin or both. All men have similar, neutral facial expressions. The photographs are proportional in size to one another. Across all photographs, the background color and lighting is consistent.

*Id.* at 1007. That the defendant was depicted without a shirt and wearing a gold necklace, while none of the other men were shirtless or wore a necklace, did not make the photo lineup impermissibly suggestive. *Id.* The Eighth Circuit explained that the eyewitness who identified the defendant from the photo lineup "never mentioned a gold necklace in her description of [defendant] to the police. Moreover, [defendant] points to no evidence in the record suggesting that [the witness's] identification was influenced by the fact that [the defendant] was depicted as shirtless or with a necklace." *Id.* at 1007.

Whether Hruska did or did not guess Mr. House's race when she called 911 dispatch to describe the man she saw pointing a gun at another person outside her house on July 26, 2013 is really not important. Hruska described the clothes House was wearing and when the police arrived, he fled. House was apprehended and arrested. House's booking photo was used to find photos of other men whose physical characteristics were similar to his to create a "six pack" photo lineup. All of the men in the photo lineup have dark brown hair, dark brown eyes, at least some form of a goatee, and all but one have at least a partial or "stubble" mustache. Their skin tones are not exactly the same but are similar. Three of the six have tattoos on their necks. Their hair varies in length, but all appear to have hair of similar texture. The men appear to be similar in age and build. The photographs are proportional in size to one another. Across all photographs, the background color and lighting is consistent.

Neither the slight difference in skin tone nor hair length render the photo lineup impermissibly suggestive. *See e.g. United States v. Jones*, 507 Fed. Appx. 633 (8th Cir. 2013) (reasonable variations in hair length and facial hair are not impermissibly suggestive, especially as

---

[5]The *Gilbert* Court acknowledged it necessary to reach the second inquiry only if the photo lineup is impermissibly suggestive. *Gilbert*, 721 F.3d at 1007, n.5.

4

they can vary on any given person at different times); *United States v. Knight*, 382 Fed. Appx. 905 (11th Cir. 2010) (although defendant's complexion was slightly lighter than others in the array, difference was not enough to render the lineup unduly suggestive). Likewise, that House is the only man in the photo lineup with a ponytail and that only three of the six have neck tattoos does not render the photo lineup unduly suggestive, because Hruska "never mentioned a [pony tail or tattoo] in her description of [defendant] to the police. Moreover, [defendant] points to no evidence in the record suggesting that [the witness's] identification was influenced by the fact that [the defendant] was depicted as [having a ponytail or tattoo]." *United States v. Gilbert*, 721 F.3d 1000, 1007 (8th Cir. 2013).

Only if the photo lineup was impermissibly suggestive must the Court analyze, under the totality of the circumstances, whether the lineup created a substantial likelihood of irreparable misidentification violating due process. *Id.*, at 1007, n.5. *English v. Cody*, 241 F.3d 1279, 1283 (10th Cir. 2001). Because the photo lineup was not impermissibly suggestive it is not necessary to reach the second prong of the inquiry in this case.

## CONCLUSION

For the reasons more fully explained above, it is respectfully RECOMMENDED to the District Court that Defendant's Motion to Suppress Identification Evidence (Doc. 19) be DENIED.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665 (8th Cir. 1986).

Dated this 7 day of March, 2014

BY THE COURT:

John E. Simko
United States Magistrate Judge